IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | **NO. 24-88** |
| | : | |
| **NORMAN COPPER** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                           **October 11, 2024**

Police officers seeking a search warrant must present probable cause to a judge to obtain the warrant. The officers may rely on personal observations along with investigative materials. We today evaluate warrants for an apartment, car, and storage unit for property related to a person undoubtedly violating his probation terms by leaving Philadelphia County and alleging hiding guns and drugs in Montgomery County. His probation officer confirmed his violation through GPS monitoring. The officers detailed months of investigation into Defendant's conduct, including recorded conversations in correctional facilities and personal observations. They presented detailed affidavits of probable cause to first search the apartment and car. Their permitted search of the apartment uncovered Defendant's key to a storage unit assigned to the apartment. The officers then sought a second warrant and searched the storage unit. They discovered guns and drugs among other items in the storage unit. We deny Defendant's motion to suppress the items seized under the valid search warrant issued after review of detailed affidavits of probable cause.

**I.      Background**

The state court released Norman Copper from custody in March 2021 to an approved address in Philadelphia as monitored by GPS. The state court relied upon Mr. Copper's parole

agent Brian Blaszczyk ensuring Mr. Copper's compliance with the specific terms of his release including monitoring his travels on the GPS.

### *Facts adduced from Affidavits of Probable Cause.*

In December 2023, Parole Agent Blaszczyk informed Upper Merion Township Police Mr. Copper spent most early morning hours at an unapproved location in King of Prussia.[1] Agent Blaszczyk knew the GPS location data placed Mr. Copper around the Park Square apartments in King of Prussia.[2] Agent Blaszczyk informed Upper Merion Township Police Mr. Copper is likely in possession of a firearm and involved in the sale of narcotics based on Mr. Copper's earlier criminal history and recorded prison calls monitored by Pennsylvania Department of Justice Intelligence Analyst Damien Mscisz.[3] Agent Blaszczyk also informed Upper Merion Township Police Mr. Copper drove a 2017 silver Toyota Camry co-registered in his name.[4]

In January 2024, officers in the Upper Merion Special Investigations Unit began surveilling the Park Square Apartments.[5] Detective Meoli in early January observed Mr. Copper's Toyota Camry entering the parking lot of the Park Square Apartments, positively identified Mr. Copper, and observed Mr. Copper entering Apartment 4320 with a code to gain access.[6] Detective Meoli and another detective continued to observe Mr. Copper go in and out of Apartment 4320 on five occasions in January 2024 using a code to access the apartment and observed his Toyota Camry parked at the apartment and observed Mr. Copper drive the Toyota Camry away from the apartment.[7] Detective Meoli determined Mr. Copper's then-girlfriend leased apartment 4320.[8]

Detective Meoli also received information collected by Intelligence Analyst Mscisz in January 2024 concerning Mr. Copper's activities.[9] Analyst Mscisz monitored and reviewed video visits and phone calls between Mr. Copper and incarcerated persons.[10] Analyst Mscisz knew Mr. Copper as on active parole supervision and from a July 2021 parole search of Mr. Copper in

Philadelphia resulting in his arrest for firearms offenses.[11] The Commonwealth's Bureau of Investigations and Intelligence also knew of Mr. Copper's suspected involvement in the introduction of Suboxone into a correctional facility while in Department of Corrections custody in 2019.[12] With this knowledge, Analyst Mscisz recognized Mr. Copper on a November 14, 2023 monitored video visit (by Zoom) with an incarcerated person at SCI Albion.[13] Analyst Mscisz observed the incarcerated person connect two civilians, one using the name "Norm," where they discussed possible drug transactions in Philadelphia and the introduction of drugs into the correctional facility.[14] Analyst Mscisz observed "Norm" pull something from his waistband and put it in the trunk of a car which Analyst Mscisz suspected to be a firearm.[15]

Informed by the November 14, 2023 video visit with an incarcerated person, Analyst Mscisz checked the status of Mr. Copper's criminal charges for the July 2021 firearms arrest and learned the state nolle prossed those charges and Mr. Copper remained on parole supervision.[16] Analyst Mscisz searched Zoom participants in Department of Corrections video visits which revealed Mr. Copper on a July 31, 2023 video showing his automatic assault rifle to an inmate.[17]

Detective Meoli reviewed recordings of three video prison calls and five audio prison calls from July 2023 to January 19, 2024 provided by Agent Mscisz.[18] Detective Meoli listened to ten hours of recorded video and audio calls and concluded Mr. Copper is the person heard on the video calls.[19] Detective Meoli researched the phone number and found an eighty-six percent match to Mr. Copper's phone number.[20] Detective Meoli identified Mr. Copper on the videos, which indicated Mr. Copper's use of coded language and terminology in reference to criminal activities, Mr. Copper showing an assault rifle, Mr. Copper referring to cash when saying he "keep[s] all my stuff stashed here" in the apartment (despite the fact Mr. Copper had not been employed since late 2021), and suspected pill diversion.[21] Based on the context of the calls, Detective Meoli concluded

3

Mr. Copper attempted to deliver firearms, drugs, and other illegal items for incarcerated persons, including pill diversion, and believed Mr. Copper facilitated a drug trafficking organization.[22] Based on the totality of information and their experience and training, Detective Meoli and Detective Higgins believed probable cause existed to search the apartment and Toyota Camry.

*Search following warrants discovers guns and drugs leading to indictment.*

Detective Meoli and Detective Higgins swore to the affidavit of probable cause. The two Detectives have a combined total of nearly twenty-five years of experience in narcotics work.[23] Law enforcement officers presented an affidavit of probable cause to search the apartment and Toyota Camry to the Honorable Steven T. O'Neill, Montgomery County Court of Common Pleas on January 23, 2024.[24] Judge O'Neill approved each warrant.

The search of the apartment revealed a loaded semi-automatic pistol, an extended magazine loaded with ammunition, additional ammunition in a closet containing men's clothing, shoes, and paperwork in Mr. Copper's name, and over $38,000 in cash including $6,000 found in a safe in the same closet during the execution of the search warrant.[25] The search of the apartment also revealed a key to a storage room assigned to the apartment.[26] The search of the Toyota Camry revealed three cell phones and paperwork in Mr. Copper's name.[27]

Officers applied for an additional warrant to search the storage room approved by Magisterial District Court Judge Todd Barnes on the evening of January 24, 2024.[28] The search of the storage unit revealed a suitcase and a backpack containing two semi-automatic pistols and semi-automatic rifle, additional ammunition and firearm parts, including an empty extended magazine, suspected methamphetamine, drug distribution paraphernalia, and additional ammunition and firearm lubricant, as well as mail and paperwork in Mr. Copper's name.[29]

Our Grand Jury charged Norman Copper with narcotics and firearms offenses, including possession with intent to distribute over 735 grams of methamphetamine and the possession of four semi-automatic pistols, one equipped with a silencer, in furtherance of a drug trafficking crime.[30]

**II.     Analysis**

Mr. Copper now moves to suppress items found in the apartment, Toyota Camry, and storage unit. He argues the warrants lacked probable cause because the affidavit of probable cause: (1) is based solely on the suspicions of his parole officer Brian Blaszczyk without first-hand information of substantive evidence to support his suspicions; (2) fails to allege Mr. Copper lived at the apartment or transported contraband or other illegal activity in his car, or in or out of the apartment; (3) relies on video visits by Mr. Copper with inmates confined to state correctional institutions but do not reflect illegal activity at the apartment; (4) relies on recorded prison calls between Mr. Copper and inmates but none of the calls refer to firearms or drug trafficking; (5) relies on stale information; and (6) the affiants rely only on their training and experience without facts to conclude Mr. Copper used the apartment as a stash house.

We closely examined the affidavits. We deny Mr. Copper's Motion to suppress.

The judge approving the warrant must confirm probable cause exists to search specific property. Probable cause exists when, considering "the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[31] There must be a "sufficient nexus between the contraband to be seized and the place to be searched."[32] Direct evidence linking the place to be searched to the criminal activity is not required to establish probable cause.[33] Probable cause to search "can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the

arrested."[34] Our determination of probable cause considers the totality of the circumstances including "the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experiences."[35] "The likelihood that the evidence sought is still at the place to be searched depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched."[36]

We apply a deferential review of Judge O'Neill's and Judge Barnes's determination of a substantial basis for concluding probable cause existed.[37] We do not make our own assessment as to whether probable cause existed and we must uphold a magistrate's probable cause finding even if a "different magistrate judge might have found the affidavit insufficient to support a warrant."[38] Probable cause may be reasonably inferred from "the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence]."[39]

Mr. Copper argues the warrants lacked probable cause because the affidavit contained stale information, specifically references to his criminal history from 2010 to 2021, recorded video prison calls from July and September 2023 and January 8, 2024 (two weeks before the application for the warrants), and recorded audio prison calls from December 21, 2023 to January 19, 2024. The age of information supporting an application for a search warrant is a factor we must consider in determining probable cause.[40] But age alone does not determine staleness and where activity is protracted and continuous, the passage of time becomes less significant.[41] And in the context of an ongoing investigation into narcotics operations, a span of weeks or months between the last described act and warrant application does not make the information stale.[42]

6

Agent Blaszczyk, as Mr. Copper's parole officer, knew Mr. Copper should have been at his approved Philadelphia residence and knew his GPS monitor showed Mr. Copper at an unapproved residence in the King of Prussia apartment. This is more than simply a suspicion. Agent Blaszczyk relied upon detailed surveillance and background research from Analyst Mscisz strongly suggesting Mr. Copper's involvement in guns and illegal drugs.

The affidavit of probable cause provides a criminal history report beginning in 2010 and ends with a 2021 parole search of Mr. Copper's residence resulting in the recovery of an automatic rifle and pistol. The Commonwealth nolle prossed charges resulting from the parole search but Mr. Copper remained on parole in late 2023 and early 2024 when his parole agent Blaszczyk found Mr. Copper at the unapproved King of Prussia location. Detective Meoli then began an investigation in January 2024 into suspected narcotics activity involving surveillance of the King of Prussia apartment and review of recorded prison calls all leading to the application for a search warrant on January 23, 2024. The officers did not have to allege Mr. Copper lived at the apartment or transported contraband or other illegal activity in or out of the apartment or his car. Probable cause to search requires a "fair probability" contraband or evidence of a crime "will be found in a particular place."[43] GPS monitor information obtained by Agent Blaszczyk showed Mr. Copper, as of November 21, 2023, spent most early morning hours at the apartment. Surveillance of the apartment on five separate occasions in January 2024 revealed a man, positively identified as Mr. Copper, parked the Toyota Camry (as identified by Agent Blaszczyk) outside the apartment where Detectives observed Mr. Copper coming and going from the apartment using a code for access. Information provided by Analyst Mscisz observed Mr. Copper on video visits and recorded audio calls with inmates revealing discussing firearms and illegal drug sales.

The Detectives used the gathered information and their experience in narcotics investigations and credibly averred drug dealers possess on their person, in their cars, and in their residences firearms and contraband. All of this created a "fair probability" Mr. Copper used the apartment to stash firearms and drugs creating a "sufficient nexus" to the apartment to support probable cause.

### III.   Conclusion

We deny Mr. Copper's Motion to suppress. We conclude there is a substantial basis for Judge O'Neill's and Judge Barnes's finding of probable cause to search the apartment, Toyota Camry, and storage unit affiliated with the apartment.[44]

---

[1] ECF 45-1, Affidavit of Probable Cause at 6 (using the pagination assigned by the CM/ECF docketing system).

[2] *Id.*

[3] *Id.*

[4] *Id.* at 6–7.

[5] *Id.* at 7–8.

[6] *Id.* at 7.

[7] *Id.* at 7–8.

[8] *Id.* at 7, 16.

[9] *Id.* at 8–10, 14–22.

[10] *Id.*

[11] *Id.* at 8–9.

[12] *Id.* at 12.

[13] *Id.* at 8.

8

---

[14] *Id.*

[15] *Id.*

[16] *Id.* at 9.

[17] *Id.* at 9, 15.

[18] *Id.* at 14–22.

[19] *Id.* at 17.

[20] *Id.*

[21] *Id.* at 20.

[22] *Id.* at 22–24.

[23] *Id.* at 3–6.

[24] ECF 45, 45-1, 45-2.

[25] ECF 45 at 4.

[26] ECF 45-3 at 22 (using the pagination assigned by the CM/ECF docketing system).

[27] ECF 45 at 5–6.

[28] ECF 45 at 6–7, ECF 45-3.

[29] ECF 45 at 4–5. Lab testing of the recovered substance confirmed methamphetamine, for a total of approximately 1.6 pounds of a mixture and substance containing a detectable amount of methamphetamine. *Id.* at 5.

[30] ECF 17.

[31] *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

[32] *United States v. Torres*, No. 22-2108, 2023 WL 332758, at *1 (3d Cir. Jan. 20, 2023) (quoting *United States v. Golson*, 743 F.3d 44, 54 (3d Cir. 2014)).

[33] *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) (citations omitted).

[34] *Id.*

---

[35] *United States v. Robles*, 855 F. App'x 804, 809 (3d Cir. 2021) (quoting *United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006)).

[36] *Id.* (quoting *United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997)).

[37] *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (quoting *Gates*, 462 U.S. at 238)).

[38] *Id.* (quoting *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993)).

[39] *Id.* (quoting *United States v. Jones*, 994 F.3d 1051, 1056 (3d Cir. 1993)).

[40] *Williams*, 124 F.3d at 420.

[41] *Id.*

[42] *United States v. Gallo*, 110 F. App'x 265, 268-69 (3d Cir. 2004); *see also United States v. Letterlough*, No. 22-2703, 22-3119, 2023 WL 6868797 (3d Cir. Oct. 18, 2023) (State Trooper's application for search warrants based on an affidavit of probable cause providing historical information from 2012 before an investigation into defendant's drug distribution in 2016 and information gathered during an 18-month investigation including surveillance of defendant's residences, geolocation monitoring of defendant's cell phone, information informants, and three controlled drug buys is not stale).

[43] *Burton*, 288 F.3d at 103.

[44] Because we conclude there is a substantial basis for finding probable cause in the warrant affidavits, we need not address whether law enforcement's conduct is also covered by the good faith exception. *United States v. Hodge*, 246 F.3d 301, 307–08 (3d Cir. 2001) (citing *United States v. Leon*, 468 U.S. 897 (1984)).